**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**
**Rigoberto GARCIA-NARVAEZ, aka RIGO, a/k/a MARTIN**

I, Gaston Covarrubias, being duly sworn, depose and state:

1. I am a Special Agent of the United States (U.S.) Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI). I have been employed by ICE since January 2008, as an Intern Criminal Investigator, and then from May 2008 to the present, as a Special Agent (S/A) with ICE/HSI. I am currently assigned to the HSI, Washington, D.C. field office (HSI/DC). My duties include investigating individuals involved in obtaining immigration documents and benefits through unlawful and fraudulent means. I have received extensive training in the investigation of immigration fraud both on the job and at the Federal Law Enforcement Training Center in Glynco, Georgia. I am currently assigned to the Document and Benefit Fraud Task Force (DBFTF) for the HSI/DC. I am responsible for investigating various crimes, including the manufacture and distribution of counterfeit government identification documents, human smuggling, and other violations of the United States Code involving fraudulent activities. I hold a Bachelor's Degree in Criminal Justice and Sociology and a Master's Degree in Criminal Justice Policy and Administration from Marymount University, Arlington, Virginia.

2. This affidavit contains information necessary to support probable cause for this application. This affidavit is not intended to include each and every fact and matter observed by me or known by the government.

3. This affidavit is submitted in support of a criminal complaint and warrant for arrest charging **Rigoberto GARCIA-NARVAEZ, a/k/a, RIGO, a/k/a MARTIN** (hereinafter referred to as **"GARCIA-NARVAEZ" or "RIGO"**), with violation of Title 18, United States Code, Sections 1028(a)(2), that is, knowingly transferring identification documents and false

identification documents, which appear to be issued by and under the authority of the United States knowing the same to have been produced without lawful authority.

4. On March 11, 2014, ICE/HSI DC Special Agents met with ICE/HSI DC Confidential Informant #1[1] (hereafter referred to as CI-1). During this meeting, CI-1 informed the Special Agents that the telephone number for **RIGO** is 202-549-0216 (hereafter referred to as the **TARGET TELEPHONE**).

5. On March 11, 2014, Special Agents conducted surveillance at the approximate intersection of Columbia Road, NW and Champlain Street, NW, Washington, DC. During surveillance Special Agents observed **GARCIA-NARVAEZ** on Columbia Road, NW and eventually arrive at 3636 16th Street, NW, Washington, DC.

6. On or about March 12, 2014, a Special Agent sent an ICE/HSI Administrative Subpoena to AT&T Mobility LLC for subscriber and call toll information for the **TARGET TELEPHONE.** In May 2014, a response from AT&T Mobility LLC was provided. The subscriber of the **TARGET TELEPHONE** is Rozana VASQUEZ[2], 3636 16th Street, NW, Apartment B1065, Washington, DC 20010.

7. On July 14, 2014, at approximately 4:00 p.m., two Special Agents met with CI-2[3] to make a monitored and recorded phone call to the **TARGET TELEPHONE.** The purpose of the phone call was to set up a meeting date and time to purchase fraudulent identification documents from **GARCIA-NARVAEZ** on July 15, 2014. After approximately two or three

---

[1] CI-1has no criminal history and has been provided immigration and monetary benefits.

[2] Investigators believe that "Rozana VASQUEZ" is **GARCIA-NARVAEZ's** wife or girlfriend. The government also believes that "Rozana" is a typographical error, and that the spelling of her name is most likely "Roxanna," although we have also seen it spelled as "Roxana."

[3] CI-2 has no criminal history and has been provided monetary benefits.

unsuccessful telephone calls to **GARCIA-NARVAEZ**, Special Agents provided CI-2 with the undercover telephone so that s/he could eventually contact **GARCIA-NARVAEZ**.

8.      At approximately 5:00 p.m., CI-2 called the **TARGET TELEPHONE** and spoke to a male individual on the **TARGET TELEPHONE** (this male individual would later be identified via photograph as **GARCIA-NARVAEZ**).  During this unrecorded and unmonitored phone call, **GARCIA-NARVAEZ** informed CI-2 to call him the next day (July 15, 2014) to set up a document purchase.  During the call, **GARCIA-NARVAEZ** stated that he was busy, but that he would assist CI-2 the following day.

9.      On July 15, 2014, at approximately 10:08 a.m., CI-2, in the presence of Special Agents, made a consensually monitored and recorded telephone call from an HSI undercover telephone number to **GARCIA-NARVAEZ**, in order to set up a fraudulent document purchase for later the same day, in Washington, DC.  To begin the phone call, a Special Agent dialed the **TARGET TELEPHONE** on the undercover phone and handed the phone to CI-2. Upon conclusion of the phone call, CI-2 advised agents that a Hispanic male individual answered the phone.  CI-2 stated that the individual (believed to be **GARCIA-NARVAEZ**) offered to sell CI-2 two (2) "green cards" (also known as Legal Permanent Resident cards) and two (2) Social Security cards for $160.00.  CI-2 stated that the individual agreed to meet CI-2 at Noon on Columbia Road, NW, to obtain the passport photos from CI-2 to be used on the requested "green cards."  CI-2 stated that the individual would text CI-2 the address on Columbia Road to meet and the individual asked that CI-2 text him the biographical information for the requested documents.  CI-2 said the conversation with **GARCIA-NARVAEZ** occurred in the Spanish language.

10.     At approximately 10:24 a.m., a Spanish Speaking Special Agent, posing as CI-2,

3

sent a text message to the **TARGET TELEPHONE** that contained the biographical information for the requested documents. At approximately 10:26 a.m. a text message was received on the undercover cell phone from **GARCIA-NARVAEZ,** who was using the **TARGET TELEPHONE. GARCIA-NARVAEZ** indicated that the he would only charge CI-2 $150.00 total for all four documents. At approximately 10:28 a.m., a text message was received on the undercover cell phone from **GARCIA-NARVAEZ**, who was using the **TARGET TELEPHONE. GARCIA-NARVAEZ** indicated the address to meet him at was 1772 Columbia Road, NW.

11. At approximately 11:30 a.m., Special Agents established surveillance at 1772 Columbia Road, NW and 3636 16th Street, NW, in Washington, DC.

12. At approximately 11:41 a.m., CI-2 spoke to **GARCIA-NARVAEZ** on the **TARGET TELEPHONE**, in an unmonitored and unrecorded phone conversation because CI-2 was in the field, and **GARCIA-NARVAEZ** advised CI-2 that he would meet him/her in fifteen minutes at the agreed upon meeting location.

13. At approximately 12:13 p.m., a Special Agent observed CI-2 enter the stairwell at 1772 Columbia Road, NW, followed by a Hispanic male with short hair in a blue shirt, later identified as **GARCIA-NARVAEZ**. At approximately 12:14 p.m., Special Agents observed CI-2 exit from the stairwell back onto the street. At approximately 12:41 p.m., Special Agents observed **GARCIA-NARVAEZ** exit from 1772 Columbia Road, NW and travel east on Columbia Road, NW, on his bicycle. At approximately 12:48 p.m., a Special Agent observed **GARCIA-NARVAEZ** on his bicycle traveling north on 16th Street, near 3636 16th Street NW. At approximately 12:50 p.m., the same Special Agent observed **GARCIA-NARVAEZ** enter the parking garage of 3636 16th Street, NW.

14. At approximately 3:07 p.m., a Special Agent observed **GARCIA-NARVAEZ** exit from the side entrance of 3636 16th Street, NW, and get on his bicycle. Two Special Agents then observed **GARCIA-NARVAEZ** travel south on 16th Street on his bicycle. Three Special Agents initiated mobile surveillance on **GARCIA-NARVAEZ** and maintained constant surveillance.

15. At approximately 3:13 p.m., Special Agents observed **GARCIA-NARVAEZ** arrive at 1772 Columbia Road, NW. At approximately 3:14 p.m., Special Agents observed **GARCIA-NARVAEZ** and CI-2 enter the stairwell of 1772 Columbia Road, NW. At approximately 3:15 p.m., Special Agents observed CI-2 exit from the stairwell back onto the street. At approximately 3:17 p.m., CI-2 handed over to a Special Agent a half envelope that contained four (4) fraudulent documents obtained by CI-2 from **GARCIA-NARVAEZ,** along with the two passport photos and the note paper given to **GARCIA-NARVAEZ** by CI-2 earlier in the day. The fraudulent documents consisted of two false "green cards" (also known as Legal Permanent Resident cards) and two false Social Security cards, which had not been lawfully produced by the United States government.

16. At approximately 4:18 p.m., CI-2 was debriefed by two Special Agents about his/her encounter with **GARCIA-NARVAEZ** earlier in the day. CI-2 provided the following information in substance and in part:

    a. CI-2 first met **GARCIA-NARVAEZ** in the stairwell of 1772 Columbia Road, NW. During the meeting, CI-2 provided **GARCIA-NARVAEZ** two passport photos and the biographical information for the documents. **GARCIA-NARVAEZ** told CI-2 that the documents would be ready in an hour or hour and a half and that he would call CI-2 when the documents were ready to setup a second meeting to deliver the documents.

    b. The second meeting between CI-2 and **GARCIA-NARVAEZ**

5

        occurred at the same location as the first meeting, in the stairwell of 1772 Columbia Road, NW.

    c.    During the second meeting, CI-2 provided **GARCIA-NARVAEZ** $150.00 in exchange for a white envelope that contained the four (4) fraudulent documents requested by CI-2.

    d.    **GARCIA-NARVAEZ** told CI-2 that his name was **"MARTIN"** and told CI-2 to contact him in the future if CI-2 needs more documents.

    e.    At approximately 4:30 p.m., CI-2 was shown a photograph of a male individual known to Special Agents as **GARCIA-NARVAEZ**. CI-2 identified **GARCIA-NARVAEZ** as the same person who sold him/her the fraudulent identification documents earlier in the day.

17.    Based on the foregoing, I respectfully submit that there is probable cause to believe that **Rigoberto GARCIA-NARVAEZ, aka RIGO, a/k/a MARTIN** has violated Title 18, United States Code, Sections 1028(a)(2), by selling fraudulent identification documents on July 15, 2014.

                                                          _____
                                                          Gaston Covarrubias
                                                          Special Agent
                                                           Immigration and Customs Enforcement
                                                          Homeland Security Investigations

Subscribed and sworn to before me
this _____ day of August, 2014.

_____
ALAN KAY
United States Magistrate Judge